**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X          Case No.
ALICJA STANKIEWICZ,

                                 Plaintiff,          **COMPLAINT**

         -against-

                                              **PLAINTIFF DEMANDS**
UNIVERSAL COMMERCE CORP. and          **A TRIAL BY JURY**
AL MASON, *Individually*,

                           Defendants.
-------------------------------------------------------------------X

       Plaintiff, ALICJA STANKIEWICZ, by her attorneys, PHILLIPS & PHILLIPS, Attorneys

at Law, PLLC, upon information and belief, complains as follows:

### INTRODUCTION

1.   Plaintiff brings this action charging that **Defendants failed to pay her regular wages and**

     **overtime** for all work she performed as an employee of Defendants, in violation of the <u>Fair</u>

     <u>Labor Standards Act</u>, 29 U.S.C. §201 *et seq*. ("FSLA") and the <u>New York Labor Law</u>

     ("NYLL"), and seeks to recover unpaid wages, unpaid overtime, an additional amount as

     liquidated damages, punitive damages, reasonable attorneys' fees and costs.

2.   Defendants not only failed to pay Plaintiff her regular wages, but also required her to work

     more than forty (40) hours a week, and did not pay Plaintiff overtime wages for all the hours

     she worked over forty (40) per week.

3.   Plaintiff also bring this action pursuant to the <u>New York City Human Rights Law</u>, New York

     City Administrative Code §8-502(a), *et. seq.* ("NYCHRL"), and seek damages to redress the

     injuries Plaintiffs have suffered as a result of being **sexually harassed** and **discriminated**

     **against on the basis of their gender.**

## JURISDICTION

4.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

5.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), based upon Defendants' residency within the County of New York, State of New York, within the Southern District of New York.

## PARTIES

8.  At all times relevant hereto, Plaintiff ALICJA STANKIEWICZ ("STANKIEWICZ") was a resident of the County of Suffolk and State of New York.

9.  At all times relevant hereto, Defendant AL MASON ("MASON") was an individual residing in the state of New York.

10. At all times relevant hereto, Defendant UNIVERSAL COMMERCE CORP. ("AL MASON TEAM"), was a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

11. At all times relevant hereto, Defendant MASON was the "Owner/Principal" of Defendant AL MASON TEAM.

12. At all times relevant hereto, Plaintiff was a full-time employee of Defendant AL MASON TEAM whose real estate broker license is with RUTENBERG REALTY.

13. Defendant AL MASON TEAM's principal place of business is at 127 East 56th Street, New York, New York 10022, a location occupied and provided by RUTENBERG; with some employees working remotely.

14. Defendant MASON would often work from his home located at 30 Lincoln Plaza 28N New York, New York.

15. Defendant AL MASON TEAM has more than 15 employees.

16. At all times relevant hereto, Defendant MASON was Plaintiffs supervisor and/or had supervisory authority over Plaintiff. Defendant MASON had the authority to hire, terminate, discipline and otherwise affect the terms and conditions of Plaintiff's employment.

17. At all times relevant hereto, Defendant MASON had the power to and was responsible for determining the wages to be paid to Plaintiff.

18. At all times relevant hereto, Defendant MASON had the power to, and did in fact, establish the terms of Plaintiff's employment, including Plaintiffs schedule and rate of pay.

19. At all times relevant hereto, Defendant MASON had the power to, and did in fact, actively manage, supervise, and direct the business and operations of Defendant AL MASON TEAM.

20. Plaintiff STANKIEWICZ was engaged in commerce while working for Defendants.

21. The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee and an employee is anyone who is suffered or permitted to work. As a result, including as further described below, both Defendants are liable as "employers" under the FLSA.

22. Defendants are also jointly and severally liable as joint employers under 29 C.F.R. § 791.2 for the violations complained of herein.

23. At all times material, Defendants did, and continue to do, substantial business in New York,

and engage in commerce or the production of goods for commerce within the meaning of the FLSA.

24. Upon information and belief, Defendants grossed more than $500,000.00 in the past fiscal year.

25. Plaintiff STANKIEWICZ was not exempt from overtime pay. She was not paid a salary and did not perform exempt job duties.

26. Although Defendants MASON and AL MASON TEAM misclassified Plaintiff as an Independent Contractor, Defendants had exercised complete control over Plaintiff's work.

## MATERIAL FACTS REGARDING PLAINTIFF'S UNPAID WAGE CLAIMS

27. On or about January 16, 2015, Plaintiff STANKIEWICZ began working for Defendants AL MASON TEAM as a "Global Real Estate Investment and Marketing Consultant". Defendant Mason agreed to pay Plaintiff 1% - 2% on each deal closed during her employ.

28. Defendant MASON informed Plaintiff STANKIEWICZ that he was a realtor/investor with over $500,000,000.00 worth of projects in Asia, New York and Florida. Defendant MASON also informed Plaintiff STANKIEWICZ that he represents off market luxury condos, hotels, and vacant plots ranging from $1,000,000.00 to $500,000,000.00 throughout the country.

29. On Plaintiff's first day of work, Defendant MASON asked Plaintiff STANKIEWICZ to accompany him on January 20th to a potential project he was pursuing. Plaintiff STANKIEWICZ agreed to attend.

30. The facts that follow are some examples of the control to which Defendant MASON had over Plaintiff STANKIEWICZ.

31. On or about January 18, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to order

business cards. Defendant MASON approved the design and information on the card before Plaintiff STANKIEWICZ paid for them with her personal funds.

32. On or about January 19, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to contact a list of developers from the United Arab Emirates. Plaintiff was asked to get correct email addresses and full names. This list was to be used to proposition potential customers for Defendant MASON's deals.

33. On or about January 21, 2015, Al Mason sent Plaintiff STANKIEWICZ a sample contract for potential clients and requested her to prepare it on company letterhead. Plaintiff STANKIEWICZ went back and forth with Defendant MASON with various revisions. That same day, Plaintiff STANKIEWICZ was asked to prepare a sample project report for the deals he was going to be presenting. Plaintiff STANKIEWICZ was also asked to prepare another agreement.

34. Defendant MASON asked Plaintiff STANKIEWICZ to create fliers for projects including, but not limited to, Kandy Sri Lanka Project, Custo Barcelona Project, and Wakulla Hotel.

35. On or about January 23, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to revise and remove old listing agents contact information on certain properties including 1985-1987 3rd Avenue, 150 Northern Blvd, 30 Lincoln Plaza and 151 Bowery Street and to add herself. On or about January 30, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to design a company website. Plaintiff STANKIEWICZ designed the website. The website included both Plaintiff STANKIEWICZ and Defendant MASON's name and information. This website was for Defendant AL MASON.

36. It was part of Plaintiff's duties and responsibilities to monitor the site and report any activity to Defendant MASON.

37. On or about February 2, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to contact individuals from a list of UN Ambassadors to invite them to the show. Plaintiff STANKIEWICZ made telephone calls, obtained email addresses and sent invitations to 3 different designers' showings. Plaintiff STANKIEWICZ designed 3 different invites and emailed each Ambassador. Defendant MASON asked Plaintiff STANKIEWICZ to invite the brokers with whom he was doing business.

38. Defendant MASON asked Plaintiff to invite brokers and his other contacts to Dr. Palitha's event; a networking event honoring 65th Anniversary of the independence of Sri Lanka. After Dr. Palitha's event, Defendant MASON asked Plaintiff STANKIEWICZ to email everyone she met and to tell them about what they do.

39. On or about February 11, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to make cover photos for his Facebook, Twitter, and LinkedIn accounts.

40. On or about February 20, 2015, Defendant MASON requested that Plaintiff STANKIEWICZ get business emails for both her and him at @almasonteam.com.

41. Plaintiff STANKIEWICZ is still paying for both her and Defendant MASON's email out of her personal funds.

42. On or about February 21, 2015, Plaintiff STANKIEWICZ designed new business cards for both herself and Defendant MASON for which Defendant MASON paid.

43. On or about February 22, 2015, Defendant MASON received an offer for Wakulla. Plaintiff STANKIEWICZ was promised that she would be compensated for all of the work she had done so far. She also received an email stating that funds would be deposited into her account but this never occurred.

44. Upon information and belief the Waculla deal closed. On or about May 6, 2015 Defendant

MASON emailed Plaintiff advising her that the funds would be deposited into her account that Tuesday. However, after Plaintiff had thwarted his unwanted sexual advances, Defendant MASON refused to pay her the approximate $50,000 in commission that Plaintiff was due from the Waculla sale.

45. On or about March 2, 2015, Defendant MASON sent Plaintiff STANKIEWICZ log in information for his accounts on: Facebook, Twitter and LinkedIn.  Plaintiff STANKIEWICZ later noticed he was writing to women on Facebook soliciting them to join Defendant AL MASON Team and he signed each solicitation with Plaintiff's name.

46. On or about March 18, 2015, Defendant MASON had Plaintiff STANKIEWICZ translate a Spanish article in which he was featured.

47. On or about April 17, 2015, Defendant MASON released an article in Native Society.com where he claimed that Plaintiff STANKIEWICZ was his associate leading Defendant AL MASON Team.

48. On May 1, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to send him her bank information to facilitate her wage deposits.

49. Defendant MASON arbitrarily deposited a total of $2,000 into Plaintiff's bank account placing $400 into Plaintiff's bank account on May 7, May 14, May 22, May 29, and June 5, 2015.

50. On or about May 8, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to attend a real estate convention claiming she will meet potential buyers and brokers.

51. On May 18, 2015 and May 26, 2015 Defendant MASON was concluding business with Tawan Davis of Peebles whom Plaintiff introduced to him. On May 26, 2015, they received proposal from Peebles for 219 Hudson St.  However, the owners never countered as they thought it was too low. Defendant MASON was persuading Tawan Davis to write another

offer.

52. Upon information and belief, Defendant MASON continued to work on a deal for the sale of 219 Hudson St; deliberately withholding information from Plaintiff to avoid paying her commission on the sale in retaliation for thwarting his sexual advances.

53. On or about June 4, 2015, Tawan Davis's assistant emailed Plaintiff STANKIEWICZ asking if Defendant MASON could keep their meeting on June 5, 2015. Plaintiff STANKIEWICZ was unaware of this meeting. When Plaintiff STANKIEWICZ confronted him, Defendant MASON claimed it was "a lie" and he had never scheduled anything. This was when Plaintiff became aware that Defendant MASON continued to purse deals based on the relationships she had established for him without her knowledge.

54. On or about June 15, 2015, Defendant MASON asked Plaintiff STANKIEWICZ to meet him at his building to pay her for the work she did the past two weeks.

55. When Plaintiff STANKIEWICZ arrived, Defendant MASON advised her that he didn't have to pay her and that he had other expenses more important to him. Defendant MASON told Plaintiff STANKIEWICZ that she should continue working [for free] because the money will come from all the projects.

56. On or about July 22, 2015, a client emailed Plaintiff STANKIEWICZ that Annika Martin, another employee, had been emailing him [the client] with the same project that Plaintiff STANKIEWICZ did. Plaintiff STANKIEWICZ realized that Defendant MASON had given another employee the contact information she had generated and for whom she been promised commission should a deal arise. Likewise Defendant MASON had asked Annika Martin to pitch the client a new project Apna Bazaar. This was a project that Plaintiff had previously objected to as being overpriced and unmarketable.

8

57.  On or about July 25, 2015, Plaintiff STANKIEWICZ asked Defendant MASON if he shared any of her contacts with anyone and in particular, Annika. He replied no. Plaintiff STANKIEWICZ had Defendant MASON call Annika and she confirmed that Defendant MASON provided her with these contacts.

58.  On or about July 25, 2015, Annika sent Plaintiff STANKIEWICZ details on the clients she contacted on Defendant MASON's behalf.  Plaintiff STANKIEWICZ told Defendant MASON that his way of doing business is poor. She told Defendant MASON that, "you were focused more on sexually harassing me than helping, I will be sending you a bill for all of my services."

59.  On or about July 27, 2015, Plaintiff STANKIEWICZ emailed Defendant MASON a bill for $100,000.00 for one month of her services. As of that time Defendants owed her approximately 1,514 hours, which included 844 regular hours and 672 overtime hours.

60.  On or about August 5, 2015, Plaintiff STANKIEWICZ received a cease and desist letter from Defendant MASON's attorney.  The cease and desist letter "terminated" Plaintiff although Plaintiff was constructively discharged a week prior.

61.  On or about August 7, 2015, Plaintiff STANKIEWICZ received an email for call satisfaction with the Wix.com-website provider. Defendant MASON acquired access to the website Plaintiff STANKIEWICZ designed and he had attempted to change the log-in information. Plaintiff STANKIEWICZ no longer has access to the site.

62.  Nonetheless, to date, Plaintiff's contact information is still on Defendant AL MASON's website.

63.  On or about August 11, 2015, Defendant MASON's attorney sent Plaintiff STANKIEWICZ a letter declining to pay her invoice. Furthermore, the letter stated that Plaintiff

STANKIEWICZ threatened him with a sexual harassment charges at his home on July 25, 2015 and that these threats were false and considered extortion. Moreover, Defendants' counsel requested the return of $2,000 in wages that Defendants had paid to Plaintiff, calling it a "loan".

64. Throughout Plaintiff's employment with Defendant MASON, Plaintiff STANKIEWICZ also conducted many administrative tasks for him. These tasks included filing, conference calls, arranging meetings, calendaring, showings, and following-up with brokers and owners and sellers.

65. Plaintiff STANKIEWICZ is not a broker or a real estate broker and has never represented herself to be one to Defendant MASON.

66. **However, throughout Plaintiff's employment with Defendants, Defendants willfully failed to compensate Plaintiff STANKIEWICZ for all the hours she worked.**

67. **Furthermore, during Plaintiff's tenure with Defendants, Plaintiff regularly worked in excess of forty (40) hours a week, yet Defendants willfully failed to pay Plaintiff overtime compensation at a rate of one and one-half times her regular hourly rate, for all hours worked over forty (40) per week, in violation of the FLSA and the NYLL.**

68. From about January 16, 2015 through May 16, 2015 Plaintiff worked an average of 12 hours per day, seven days a week, for a total of 336 hours per week for Defendants. This totals about 1,344 unpaid hours. From about May16, 2015 to June 16 Plaintiff worked 40 hours per week. From June 16th to the day Plaintiff was discharged, Plaintiff worked about 12 hours a week. Defendants wholly failed to pay Plaintiff for all of her time worked.

69. **Defendants paid Plaintiff an arbitrary wages amount on an inconsistent basis. Plaintiff was not advised of the reasoning's for the wages being paid.**

70. **Plaintiff was never paid the $12,000 for the website.  The website was thirty-one pages. It had taken Plaintiff three full working days, plus overtime, to complete.**

71. Defendants never provided Plaintiff with a pay stub, always paying Plaintiff by a personal check that he deposited personally by going to Plaintiff's banking institution.

72. From January 16, 2015 through on or about July 25, 2015, Plaintiff worked approximately 1,514 hours for Defendants (844 regular hours and 672 overtime hours).

73. However, for this entire time period, rather than paying Plaintiff for the hours that she actually worked, Defendants would instead give Plaintiff arbitrary checks.

74. By way of example, on May 7, May 14, May 22, May 29 and June 5th Defendant MASON deposited $400 into Plaintiff's bank account. Defendants deposited a total of $2,000 into her bank account. Defendants asked for the money back in his last letter. He considered it a "loan".

75. **Defendants thus failed to pay Plaintiff her earned wages on a semi-monthly basis, in violation of the NYLL.**

76. Defendants have also failed to reimburse Plaintiff for all out of pocket expenses incurred on behalf of Defendants in the amount of $4,000.

77. Defendants also failed to pay Plaintiff a premium/additional amount for hours worked in excess of ten (10) hours per day.

78. Throughout all relevant time periods, upon information and belief, Defendants failed to post and/or to keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA and the NYLL.

79. Throughout all relevant time periods, upon information and belief, Defendants failed to maintain accurate and sufficient time records.

80. Plaintiff's performance was, upon information and belief, above average during the course of his employment with Defendants.

81. Defendants violated the FLSA by not paying Plaintiff for overtime work.

82. Defendants violated the NYLL by not paying Plaintiff for wages and/or overtime.

83. **Defendants' actions were willful.**

84. As Defendants' conduct has been willful, outrageous, malicious, and done with full knowledge of the law, Plaintiff also demands punitive damages against both Defendants.

**SEXUAL HARASSMENT**

85. On or about February 25, 2015, Defendant MASON sent Plaintiff STANKIEWICZ a link to his zodiac sign. This page described "The Leo Man" and explained the love and romantics involved with Leo Man. Plaintiff STANKIEWICZ understood this to be an unwanted sexual advance.

86. On or about February 26, 2015, Defendant MASON invited Plaintiff STANKIEWICZ to his apartment. Prior to that day all their meetings took place at the lounge on the 31st floor of Defendants' building. Plaintiff STANKIEWICZ was aware that Defendant MASON's wife had left town for 5 weeks, just two days prior. Defendant MASON's request for a meeting in his private home felt like another unwanted sexual advance.

87. When Plaintiff STANKIEWICZ got there, he had alcoholic drinks ready for them. Plaintiff STANKIEWICZ kindly refused and told him that she does not drink. Defendant MASON continued to insist that she have a drink.

88. During this discussion, Defendant MASON told Plaintiff STANKIEWICZ that he would make Plaintiff a powerful woman. In exchange, however, Defendant MASON required Plaintiff to be single and to not date. Defendant MASON indicated he wanted Plaintiff's

attention focused only on the AL MASON team.

89. Defendant MASON then asked Plaintiff STANKIEWICZ, "If you remain single, what will you do for sex?"

90. Defendant MASON told Plaintiff STANKIEWICZ that his zodiac sign (Leo) is very compatible with Plaintiff's (Aries). Defendant MASON also told Plaintiff STANKIEWICZ that he can swim 50 butterfly strokes, that he takes estrogen because it keeps him young, and that he has a body and strength of a 20 year old. He then asked Plaintiff STANKIEWICZ to study the link of the Leo man he sent her the day before. Plaintiff understood this series of comments to be an unwanted sexual advance.

91. On or about July 27, 2015, Defendant MASON sent Plaintiff STANKIEWICZ a link of "Leo and Aries Love Compatibility".

92. Defendant MASON sent Plaintiff STANKIEWICZ multiple harassing text messages. A few examples will follow below.

93. On March 1, 2015, Defendant MASON referred to Plaintiff STANKIEWICZ as honey for the first time.

94. On or about March 5, 2015, Defendant MASON sent Plaintiff STANKIEWICZ a photo of her playing golf and referred to her as "baby".

95. On or about March 8, 2015, Defendant MASON handed Plaintiff STANKIEWICZ a card and read it to her. The card read among other things, "I promise you a love that's true forever and a day…"

96. On or about March 11, 2015, Defendant MASON texts Plaintiff STANKIEWICZ that he misses her.

97. On March 12, 2015, Defendant MASON gave her a print out of her horoscope and read it

to her underlining key words.

98. On or about March 17, 2015, Defendant MASON took a picture of Plaintiff STANKIEWICZ for the website. Defendant MASON then told Plaintiff STANKIEWICZ that he loves her.

99. On March 20, 2015, Defendant MASON continued to text Plaintiff, "honey, baby, miss you".

100. Plaintiff always rejected Defendant MASON's sexual advances and asked him every time to stop calling her by these nicknames and to instead call her by her actual name. However Defendant MASON ignored these requests and continued to harass Plaintiff.

101. On or about March 26, 2015, Plaintiff STANKIEWICZ told Defendant that these nicknames are inappropriate and that he shouldn't use them.

102. Despite Plaintiff's complaints, Defendant MASON continued to refer to Plaintiff STANKIEWICZ as "baby" and "honey".

103. On or about April 5, 2015, Defendant MASON leaned towards Plaintiff for a kiss.. Defendant handed Plaintiff a fraudulent business agreement and expected a kiss. Plaintiff STANKIEWICZ rejected this sexual advance.

104. On or about April 17, 2015, Defendant MASON sent Plaintiff STANKIEWICZ a dress for her birthday. The dress was a short skimpy dress.

105. On April 18, 2015, Defendant MASON texted Plaintiff STANKIEWICZ a poem.

106. On or about April 19, 2015, Defendant MASON called Plaintiff STANKIEWICZ "baby" in front of a client. Plaintiff STANKIEWICZ again asked that Defendant MASON stop the unwanted sexual advances.

107. Throughout the end of March and beginning of April, Defendant MASON would

ask Plaintiff STANKIEWICZ "to move in with him" and that she could be his "second wife".

108.     On or about July 25, 2015, Plaintiff STANKIEWICZ was constructively discharged from Defendants place of work because she could not stand the hostile work environment any longer and Defendant had stopped paying Plaintiff.

109.     Upon information and belief, no other employee of Defendants were treated in the above fashion by Defendants but for Plaintiff STANKIEWICZ because of her gender.

110.     The above acts are only an example of the acts Plaintiff STANKIEWICZ was exposed to on a regular basis by Defendants.

111.     Plaintiff STANKIEWICZ was regularly exposed to a sexually offensive, and hostile work environment.

112.     Plaintiff STANKIEWICZ has been unlawfully discriminated against, was humiliated, retaliated against, has been degraded, victimized and embarrassed; and as a result suffers loss of rights, emotional distress, loss of income, earnings.

113.     Plaintiff's STANKIEWICZ performance was, upon information and belief, above average during the course of employment with the Defendants.

114.     Plaintiff STANKIEWICZ was treated differently by Defendant because of her gender (female).

115.     Defendants' actions and conduct were intentional and intended to harm Plaintiff STANKIEWICZ.

116.     As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff STANKIEWICZ suffered severe emotional distress, physical ailments, and physical injuries.

117.     As a result of the acts and conduct complained of herein, Plaintiff STANKIEWICZ has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff STANKIEWICZ has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

118.     As a result of the above, Plaintiff STANKIEWICZ has been damaged in an amount in excess of the jurisdiction of the Court.

119.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff STANKIEWICZ demands Punitive Damages as against all the Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### OVERTIME

120.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

121.     Defendants willfully employed Plaintiff in the afore-mentioned enterprise for workweeks longer than forty (40) hours and failed to compensate Plaintiff for his employment in excess of forty (40) hours per week at a rate of at least one and one-half times the rate at which he was employed.

122.     Defendants failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C. §201 et seq. and its implementing regulations.

123.     Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA, was a direct violation of the FLSA, specifically 29 U.S.C. §207.

124.     Defendants' failure to pay proper overtime wages for each hour worked over forty (40) per week was willful within the meaning of 29 U.S.C. §255.

125.     Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

### AS A SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW
### OVERTIME

126.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

127.     Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.).

128.     Defendants failed to pay Plaintiff a premium for hours worked in excess of forty (40) hours per week.

129.     Defendants violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

130.     Defendants also failed to pay Plaintiff a premium/additional amount for hours worked in excess of ten (10) hours per day.

131.     Under New York State law, an employee is entitled to an extra hour's wages for any day when the employee's "spread of hours" exceeds ten (10) hours (12 NYCRR § 142-2.4).

132.     Defendants also violated New York State Labor Law, including but not limited to, Labor Law 12 NYCRR § 142-2; §§ 198, 162, 663 et seq.

133.     Defendants' failure to comply with the New York Labor Law overtime protections caused Plaintiff to suffer loss of wages and interest thereon.

134.     Defendants' failure to pay proper overtime wages for each hour worked over forty (40) per week was willful.

135.     Defendants' failure to pay "spread of hours" wages caused Plaintiff to suffer loss of wages and interest thereon.

136.     Defendants' failure to pay "spread of hours" wages was willful.

137.     On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.


**AS A THIRD CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK LABOR LAW**
**FAILURE TO MAKE TIMELY PAYMENT OF WAGES**

138.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

139.     Pursuant to New York Labor Law § 191(1)(d), an employee "shall be paid the wages earned … not less frequently than semi-monthly, on regular pay days designated in advance by the employer."

140.     Defendants failed and refused to pay Plaintiff not less frequently than semi-monthly, in violation of New York Labor Law § 191(1)(d).

141.     Due to Defendants' New York Labor Law violations, Plaintiff has been damaged in amount as yet undetermined and is entitled to liquidated damages, reasonable attorneys' fees and costs.


**AS A FOURTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW and NYCRR TITLE 12**
**EMPLOYEE RECORDS**

142.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

143.    Defendants failed to keep employee-specific records documenting, *inter alia,* actual hours worked in each week, in violation of New York Labor Law § 661 and 12 NYCRR 142-2.6.

144.    Defendants failed to furnish statements with pay and hour information to Plaintiff, in violation of 12 NYCRR 142-2.7.

## AS A FIFTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW and NYCRR TITLE 12
## NOTICE POSTING

145.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

146.    Defendants failed to post any notice summarizing the employee's rights in a conspicuous place at the workplace in violation of 12 NYCRR 142-2.8, thereby depriving Plaintiff of any information or understanding of his rights under state minimum wage and overtime laws.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

147.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

148.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful

employment practices of the above-named Defendants.  Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

149.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender (sexual harassment that resulted in a hostile work environment).

## SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

150.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

151.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

152.    Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

## EIGTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

153.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

154.    New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

155.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender (sexual harassment that resulted in a hostile work environment).

## NINTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

156.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

157.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

158.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## TENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## INTERFERENCE WITH PROTECTED RIGHTS

159.     Plaintiff repeats, repeats and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

160.     New York Administrative Code Title 8-107(19) Interference with protected rights.

It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten

or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in

the exercise or enjoyment of, or on account of his or her having aided or encouraged any

other person in the exercise or enjoyment of, any right granted or protected pursuant to this

action.

161.     Defendants violated the section cited herein as set forth.

### ELEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

162.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

163.     The New York City Administrative Code §8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of

any of the acts forbidden under this chapter, or attempt to do so."

164.     Defendants engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the

above discriminatory, unlawful and retaliatory conduct.

### TWELFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

165.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

166.    New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1.  the employee or agent exercised managerial or supervisory responsibility; or

        2.  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c.  An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise

only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

167.    Defendants violated this section cited herein.

## JURY DEMAND

168.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants violated the Fair Labor Standards Act of 1938 and all Applicable New York State Labor Laws;

B. Awarding damages to Plaintiff, retroactive to the date of his discharge and prior, for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Declaring that Defendants' violations of wage and overtime wage protections were willful;

D. Granting judgment to Plaintiff for his claims for unpaid wages as secured by the FLSA as well as an equal amount in liquidated damages, and awarding Plaintiff costs, expenses, and reasonable attorneys' fees;

E. Granting judgment to Plaintiff for his claims for unpaid wages as secured by the NYLL, as well as an equal amount in liquidated damages and interest, and awarding Plaintiff costs, expenses, and reasonable attorneys' fees;

F. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296 *et. seq.,* and the New

York City Administrative Code § 8-107 *et. seq.* in that Defendants discriminated against Plaintiff on the basis of her gender with sexual harassment and retaliated against her as well;

G.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in a amount in excess of the jurisdiction of all lower courts;

H.  Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed;

I.  Awarding Plaintiff punitive damages;

J.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

K.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
      March 18, 2016

**PHILLIPS & PHILLIPS,**
**ATTORNEYS AT LAW, PLLC**

By:     *[signature]*
Marjorie Mesidor, Esq.
Brittany Stevens, Esq.
*Attorneys for Plaintiff*
45 Broadway Street, Suite 620
New York, New York 10004
Tel: (212) 587-0760
mmesidor@tpglaws.com
bstevens@tpglaws.com
